## DEMAND BY STOCKHOLDER FOR INSPECTION OF BOOKS.

Common Pleas Court of Cuyahoga County.

FRANK P. WHITNEY v. THE AMERICAN SHIPBUILDING COMPANY.

Decided, December 18, 1912.

*Corporations—Construction of the Statutory Privilege Given to Stock-holders to Examine Books—Legislative Intent to Conserve the Interests of all Stockholders and of the Corporation—Idle Curiosity, Pursuit of Personal Advantage or a Purpose Hostile to the Interests of the Corporation, Bar the Right of Inspection—Ratio Decendi of Court Decisions and the Limitation Upon Them as Precedents—Section 8673.*

In an action by a stockholder to enforce the privilege of inspection of the books and records of the defendant corporation, the presumption of good faith obtained, and allegations of stock ownership, demand for inspection and refusal thereof, make a *prima facie* case for judicial interposition; but when this presumption is met by allegations of bad faith, they are defensive and material, and a motion does not lie to strike such allegations from the answer. [The *dictum* in *Cincinnati Volksblatt Co. v. Hoffmeister*, 62 Ohio St., 189, is not followed in this case.]

*Griswold & White,* and *Thompson, Hine & Flory,* for plaintiff.
*Hoyt, Dustin, Kelley, McKeehan & Andrews,* contra.

PHILLIPS, J.

On motion to strike from answer.

Section 8673, General Code, provides that "the books and records of the corporation, at all reasonable times, shall be open to the inspection of every stockholder."

Under favor of this statute, plaintiff, a stockholder in the defendant company, brings this action for a mandatory injunction requiring defendant to permit him to inspect its records, books and papers.

Defendant answers that the attitude and purpose of plaintiff are inimical to the corporate interests and business of the defendant; that his demand for inspection is not made in good

faith *as a stockholder*; that his purpose is to obtain information to be used in the prosecution of sundry actions now pending, and in actions yet to be brought, against this defendant, in which actions this plaintiff is interested adversely to this defendant; that said actions, and this demand for inspection, are parts of a conspiracy to injure defendant; and that the inspection demanded would be an abuse of the statutory right, and a wrong to all the stockholders of the defendant company.

Plaintiff moves to strike out parts of the answer because immaterial and not defensive. In support of the motion, it is claimed that the right of inspection by a stockholder is an absolute right, and is not affected by the purpose of the inspection or the motive of the demand. On the other hand, it is claimed that while the *stockholder* seeking the order of the court need not, in the first instance, assert the propriety of the inspection, or the good faith of the demand, the *company* may assert and show the *want* of propriety and good faith, to oppose the interposition of a court of equity.

To make way for intelligent and instructive study of the cases —which are many and conflicting—let us ascertain, if we can, the true meaning and application of the statute, bearing in mind as we proceed, that the language of a statute can have only one true meaning, however various the facts that may be subsumed in its application.

If we adopt what is called, in legal hermeneutics, close interpretation, and adhere to the literal sense of the words, it is clear that the language of the statute would subject the company to inspection by friend or foe, with or without a purpose, to satisfy idle curiosity, or with a malicious purpose to injure the company or some member of it.

When literal interpretation leads to results so obviously at variance with any conceivable legislative intent, we must resort to what is known as extensive or liberal interpretation, and perhaps to construction, to find the *legislative purpose,* which must be our guide in the application of the legislative expression.

There is legislative purpose in every enactment, and it is the province of the court to discover and to carry out that purpose.

This statute, and like statutes in other states, confer the right of inspection upon ''stockholders,'' and stockholders only. This shows the legislative purpose to be that stockholders shall exercise this right of inspection *qua* stockholders; that is, the stockholder is to exercise this right in respect of his relation and status *as stockholder*. The term *stockholder* is not expansive; it is definite. It is not merely *descriptive* of the person who may make inspection; it is *restrictive*. Any other interpretation of the statute would rob it of legislative purpose, and leave the courts without any guide in its application.

If the legislative purpose were to authorize inspection out of idle curiosity, or to gain some personal advantage, or for purposes inimical to the corporate interest, there would be no reason for restricting the privilege to stockholders. It might, with equal reason and propriety, be conferred upon strangers, and upon business rivals. The legislative intent is not merely to expose the corporate records to inspection, and it is not merely to confer a favor upon the inquisitive stockholder.

Suppose it were made to appear in such case, that the real purpose of the stockholder was to get access to the books and papers to purloin or destroy them; would a court of equity aid him? Is this statute intended to aid in the accomplishment of such design?

The Legislature never intended to authorize an offensive or vexatious espionage, to be exercised from motives of idle curiosity or for the promotion of evil and vicious purposes.

The object of the Legislature was to conserve the corporate interest of stockholders one and all.

At common law, the stockholder's right of inspection was not an absolute right, to be exercised regardless of purpose or occasion, and was always enforced with caution, so as to prevent abuse. The application must show a proper purpose, and then the order of the court will restrict the inspection so as to subserve that purpose. *In re Steinway,* 159 N. Y., 250; *2 Barnwell & Adolphus,* 115.

The rule respected and conserved the rights of other stockholders, as well as the rights of the applicant.

In *Mitchell* v. *Rubber Company,* 24 Atl., 407, the New Jersey Court of Chancery, considering the defense that the application was not in good faith, and holding that the purpose to promote his competing business did not show bad faith, adds:

"Cases may often arise where his interests are very small, and however plain his legal rights may be, he only preserves them with some mischievous purpose.  In such case, if the purpose be clearly established, the court would not lend its aid to its accomplishment."

This answer attacks not only the propriety and good faith of plaintiff's demand for inspection, it also challenges his status as a stockholder.  It alleges that he purchased one share of stock, not to become a stockholder in good faith, but to put himself in a position to circumvent and injure the corporation, and as part of a conspiracy to that end.  Is such allegation, if true, material and defensive?

*Id certum est,* that one not a stockholder can not be entitled to inspection, under the statute.  If he is only nominally a stockholder, having obtained a single share for the sole purpose of injuring the company, is he, with this odium attached to his ownership of stock, in any better position?  Is the *locus standi* of such stock-owner one that the statute is intended to protect?  Does such false attitude, such false pretense, commend a suitor to a court of equity, which demands that suitors come in good faith and with clean hands?

This part of the answer shows, that while the plaintiff comes to court in the guise of a stockholder, this attitude is only assumed *pro re nata,* and is really a disguise—that while the hand may be the hand of Esau, the voice is the voice of Jacob.

As matter of pleading, the averment that plaintiff is a stockholder is matter of inducement, essential to show the plaintiff's capacity to sue—just as would be an allegation that plaintiff is executor, or is a corporation.  Such averment, though matter of inducement, is an issuable averment.  The parts of the answer sought to be stricken out are pleaded as a defense of new matter, not denying any facts stated by plaintiff.

The defendant, not denying that there is one share of stock registered in plaintiff's name, places this fact in juxtaposition with correlated facts, to show that, as part of the entire group of facts to which the fact of stock-ownership belongs, it does not clothe plaintiff with the capacity which it apparently does when segregated and standing alone. In this way, the parts of the answer asked to be stricken out are intended to show, and do tend to show, that plaintiff is not a stockholder of the defendant company within the purview of the statute authorizing inspection of records. It is not enough that plaintiff is a stockholder; he must be a stockholder within the meaning and purpose of the enabling statute—a distinction which, it seems to me, some of the courts have failed to make.

In practically all the courts of this country where such enabling statutes have been enforced, an allegation of the *purpose* of the inspection has not been required of the plaintiff. It is different where the inspection has been enforced as a common-law right, or where the statute expressly restricts the right. The reason for not requiring an allegation of the purpose in the first instance is, that the courts indulge the presumption that the inspection is sought in good faith and for a proper purpose. This is a rebuttable presumption, and the *fact* so *presumed* may be traversed as if it had been *pleaded*. This makes way for the kind of answer under consideration.

If the statements of this answer are true, the attitude of this plaintiff toward the defendant corporation, in the matter of the inspection of records, is that of an adversary. It does not follow from what has been said, that no information as to contents of records and papers can be had, notwithstanding the attitude be that of an adversary. But to do this—to obtain information for use as an adversary—resort must be had to the various means incident to judicial procedure. But the use of such incidents of litigation is limited to such privileges and such information as one may rightfully demand *as an adversary*. Resort to deception and pretense to obtain information from an adversary is not in harmony with the judicial motive.

The question under consideration has been before the courts in a multitude of cases in other states; and some courts have held that the purpose of the stockholder—whether his application is made in good faith or in bad faith—can not be made the subject of judicial inquiry. These decisions are rested mainly upon the assumption that the right of inspection, unless qualified by the statute, is an absolute right, conferred without legislative reason or purpose. Most of these cases are not well considered, are wanting in the *ratio decendi* which must characterize a sound decision, and abound in *obiter dicta*.

For example, I refer to the case of *Weihenmayer* v. *Bitner,* 88 Md., 325, cited in support of this motion. The answer alleged that the plaintiff was a rival of the defendant in business, and sought inspection to obtain information to be used in his business, to the injury of the corporation. The replication denied this purpose, and the court says, "no proof whatever was offered" upon this issue.

This eliminated that issue, and the propriety and effect of such answer was not before the trial court, or the reviewing court. But the court adds this *dictum*: "But the petitioner's right would not be forfeited by any such cause. The right is given to him as a stockholder by statute, and is absolute and not made to depend upon any circumstance but the ownership of stock." And the court then adds: "It is easy to see that there might be good reasons for refusing an application; for instance, if it were made for some evil, improper or unlawful purpose. And if such purpose were alleged and proved, the writ would be denied."

If these *dicta* were to be treated as authority, they would show only that while there are improper purposes justifying the refusal of inspection, the promotion of a rival business is not one of them.

A judgment for the corporation was reversed, on the sole ground that the trial court refused to instruct the jury that upon the facts admitted in the pleadings the verdict should be for the plaintiff. The decision is not an authority in this case, though a *dictum* in the opinion seems to favor the contention of the defendant here.

*Johnson* v. *Langdon,* 135 Cal., 624, presented this question in precisely the way in which it is here presented. The petition did not state the purposes of the inspection. A demurrer to the petition was overruled. The corporation answered that the purpose of the applicant was to injure the corporation, by obtaining information to be used by rival corporations in which plaintiff was a stockholder. On motion, these averments were stricken out; and this action of the trial court was affirmed by the Supreme Court, holding that "it is no defense to allege that the objects and purposes of the inspection are improper, and that the petitioner desires to injure the business of the corportation. The clear legal right given by the statute can not be defeated by inquiry into motives."

Yet, in the opinion the court says:

"It may be conceded that cases may arise in which a small stockholder, largely interested in some other corporation, desires the information for improper purposes. But we can not presume such purposes or motive, nor can we allow it as a defense to an application for a writ of mandamus. We must presume that the owner of part of the stock of a corporation is interested in its welfare and prosperity; that he desires to know the condition of its business affairs for the same reason that any prudent business man would desire to know the condition and management of his private affairs."

With apology to the Supreme Court of California, I suggest that it is idle to talk of a presumption of good faith, when the contrary has been alleged, and the allegation has been stricken out.

The contrary decisions are greater in number, are better considered, and rest, as it seems to me, upon authoritative reason and sound principle. As a typical case, I refer to *Lyon* v. *The Screw Company,* 16 R. I., 472, where it was held that the right of inspection is not an absolute right, and is not to be enforced unless some reasonable purpose is to be subserved. The court said:

"The power of the court should be exercised in such cases with great discrimination and care; and while stockholders

should be carefully protected from any abuse on the part of the corporation, or unjust denial of their rights, so, on the other hand, courts should guard against all attempts, by combinations hostile to the corporation or its officers, to use its writ to accomplish their personal or speculative ends.'' The application was refused.

The rule, as settled by the weight of authority, both in this country and in England, is concisely stated by the Supreme Court of Washington, in the syllabus of *State, ex rel*, v. *The Brewing Company*, 21 Wash., 451, as follows:

''A stockholder of a corporation has a right, at reasonable times, to inspect and examine the books and records of such corporation, so long as his purpose is to inform himself, in the interests of the corporation, as to the manner and fidelity with which the corporate affairs are being conducted; and, upon refusal to permit such inspection, may enforce the right by mandamus proceedings.

''The presumption, when a stockholder applies for inspection of the corporate books and accounts, is that the inspection is sought in the interest of the corporation; and when the refusal is based on the ground that the inspection is sought for purposes antagonistic to the corporation, the burden is upon the officers refusing inspection to establish that the stockholder is not proceeding in good faith.''

The case of *Volksblatt Co.* v. *Hoffmeister*, 62 O. S., 189, is relied on as settling the law for Ohio that the *motive* of the stockholder in seeking an inspection of records is not a proper subject for judicial investigation. This case has been cited by courts of this state and of other states, as so deciding. A *dictum* in the opinion does so state, but such is not the doctrine of the case.

The authority of a decision is found not in the language of the opinion, nor of the syllabus, nor in the judgment pronounced, but in the doctrine of the case, the reason of the decision, the *ratio decendi*. It is found in the proposition of law necessarily involved in the decision; and the proposition of law necessarily involved is one without which the case could not be decided. The jurisdiction of the court is restricted to the decision of such proposition, and its decision is not a precedent for anything beyond this. 38 O. S., 455, 459.

Professor Wambaugh, in his book on the Study of Cases, says:

"The first key to the discovery of the doctrine of a case is found in the principle that the court making the decision has no authority to decide any case except the case actually presented."

A decision becomes a precedent, therefore, only upon such points of law as are actually decided, and only upon such of these as are *necessarily* decided.    All else is *dictum,* whether found in the opinion or in the syllabus.

In the Hoffmeister case, the petition alleged the plaintiff's ownership of stock, his demand for inspection, and the company's refusal.    It did not allege the purpose of the inspection.    The corporation demurred to the petition, and the demurrer was overruled.    The corporation then answered, alleging various facts showing the bad faith of the plaintiff.    The plaintiff traversed these averments of bad faith by a reply.    Upon these issues the trial court found for the plaintiff; that is, the court found that the averments of fact showing bad faith were not proved.    Judgment was entered enjoining the defendant from preventing an inspection.    This finding eliminated all possible question as to the *legal* sufficiency of the answer, and rested the judgment solely upon the legal sufficiency of the petition.    No question was made by the reviewing court as to the legal sufficiency of the answer, and none could be made, because its averments had been found to be untrue *in fact.*    The Supreme Court could not have decided that the answer was not defensive, because that question was not involved in the record, and the court did not have jurisdiction of it.

It is clear, from an examination of the case, that the court did not decide, and did not undertake to decide, as to the legal sufficiency of the answer.    The syllabus shows that the doctrine of the case is restricted to the requisites, and the sufficiency, of the petition.    It is in these words:

"The right to inspect does not depend upon the motive or purpose of the stockholder in demanding such inspection; and a petition which shows that the plaintiff is a stockholder, that he has requested the defendant to allow him to inspect the books

and records of the corporation, and fix a reasonable time for the same, which request has been refused, states a cause of action.''

The opinion does contain this *dictum*:

''We are of the opinion that where a suitor demands the enforcement of a clear right given him by law, whether the remedy be legal or equitable, his motive for such action is not a proper subject for judicial investigation.''

Immediately following is this:

''The petition stated a cause of action, and if supported by the evidence, warranted the granting of equitable relief.''

The mischief of this *dictum*, and of the decisions in line with it, is that it gives dominance to the legal right of one stockholder, and loses sight of the rights of others, and of the corporation charged with the protection of all the stockholders alike, and encourages all sorts of deviltry by a would-be-mischief-maker, and makes the court a party to the schemes to injure and annoy for the sole purpose of inflicting a wrong. And again, it is a mistaken view to call the statutory privilege a *right*; it is only a privilege conferred as a means of protecting a property-right; and to uphold the exercise of the privilege, when the sole purpose is malevolent, is not the protection of any right and does not accord with the judicial motive.

In *Caldwell* v. *Hill*, 2 O. L. R., 294 (17 O. Dec., 801), the Superior Court of Cincinnati followed the Hoffmeister case, having misconceived the doctrine of that case.

The decision in our circuit court, affirming the judgment of Judge Vickery in an earlier stage of this case, holds only that the statutory privilege of inspection applies as well to foreign corporations doing business in this state as to domestic corporations. It does not relate to the question now involved.

Nearly every court that has considered this privilege of the stockholder has said or intimated that there is a limit to its rightful exercise, and that the courts are not without power to prevent an abuse of the privilege. The trend of the authoritative decisions, and much of the *dicta*, is to the effect that when the

stockholder exercises his privilege of inspection, he stands in a fiduciary relation toward the corporation and other stockholders, and that the courts will not aid him if his purpose be to violate his trust.

I find that there is no authoritative decision in Ohio upon the question under consideration. The question being *res nova* in Ohio, I adopt what seems to me the doctrine best fortified by reason and authority both in this country and in England, and which I summarize as follows:

The statutory right to inspect books and records belongs, primarily, to every stockholder, in his right of stock-owner, and for the conservation of his rights as such owner.

In an action to enforce this right of inspection, an allegation of ownership of stock, demand for inspection, and refusal thereof, makes a *prima facie* case for judicial interposition, without averment of the purpose, because the presumption is, that inspection is sought in good faith.

But if it be made to appear that the demand is made in bad faith, not to conserve the interests of the stockholder or of the corporation, the relief sought will be denied.

Allegations by the corporation of facts showing such bad faith are defensive and material, and will not be stricken from its answer.

Motion refused.